

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS

ATTORNEY GENERAL

Hon. Sidney Latham
Secretary of State
Austin, Texas

Dear Sir:

Attention: Mr. W. Luther Betes

Opinion No. 0-5864
Re: Is the discount at which a cor-
poration's own capital stock is
re-acquired through a cash purchase
surplus for franchise tax purposes?

Your letter of February 4, 1944, requesting the
opinion of this department on the above stated question,
reads as follows:

"The Wilson Manufacturing Company is a Texas
corporation manufacturing oil field machinery, and
subject to the franchise tax.

"The corporation has an authorized and paid in
capital stock of $1,250,000.00, represented by 12,500
shares of a par value of $100.00 per share, and paid
the franchise tax upon this amount for the years 1941,
1942 and 1943. The franchise tax reports filed for
such years, however, show a reserve of $106,935.94 as
profit on treasury stock, but was not shown as taxable
capital.

"Our inquiries questioning the source of the
reserve brought out the fact that the corporation
purchased some of its own capital stock at less than
par value, charging the capital stock account with the
par value represented by the number of shares purchased
and crediting 'Reserve for Profit on Treasury Stock'
with the difference between the par value and the amount
paid therefor. This resulted in reducing the capital
stock account to $1,021,800.00 for balance sheet purposes,

ION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSIS'

Hon. Sidney Latham, page 2

indicating a purchase of $228,200.00 par value stock, but at a discount of $106,935.94, as the 'Reserve for Profit on Treasury Stock' reveals. Since the capital stock cannot be decreased except by charter amendment, however, the corporation computed and paid the franchise tax on the full amount of authorized and paid in capital stock.

"This department has made assessments of additional taxes for each of the above mentioned years based upon the $106,935.94 reserve upon the theory that this constitutes a donated surplus and taxable for franchise tax purposes. The corporation has protested the assessments, contending that the re-acquired stock should be recognised as being only of the value paid therefor and set upon the books accordingly. This would eliminate the reserve account, but the amount set up on the asset side as treasury stock would not represent the value of the stock from a par value standpoint.

"From an accounting standpoint, in order to reflect the actual conditions or circumstances involved in the purchase, the par value of the stock re-acquired should be set up on the asset side, cash credited with the purchase price and the discount shown as a credit on the liability side.

"In the light of the facts given, would you advise us on the following question:

"Is the discount at which a corporation's own capital stock is re-acquired through a cash purchase surplus for franchise tax purposes?

"Your answer to the above as soon as the facilities of your office will permit will be appreciated."

Article 7084, Vernon's Annotated Civil Statutes, as amended, imposes a franchise tax based upon a stated proportion of "the outstanding capital stock, surplus and undivided profits," plus certain listed types of bonds, notes and debentures. A solution of your problem lies in ascertaining the correct method of computing "the outstanding capital stock, surplus and undivided profits" of the corporation in question.

Hon. Sidney Latham, page 3

Article 1332, Vernon's Annotated Civil Statutes, sets forth the statutory formalities for a decrease of capital stock by a corporation, said formalities including affirmative action by a two-thirds vote of outstanding stock and the filing with the Secretary of State of certain information supported by affidavit.

When a corporation buys shares of its own capital stock, the capital stock is not reduced by that amount, nor is the stock merged. San Antonio Hardware Co. v. Sanger, 151 S. W. 1104, writ of error refused; Howe Grain & Mercantile Co. v. Jones, 51 S. W. 24, (not appealed to Supreme Court); Cook on Corporations, 6th Edition, Section 313, page 854; Thompson on Corporations, 3rd Edition, Sections 4081 and 4084; West Texas Utilities Co. v. Ellis, 102 S. W. (2d) 234, 239, reversed on other grounds, 126 S. W. (2d) 13.

And it is well settled that the term "outstanding capital stock," as used in franchise tax statutes, includes stock, usually termed "treasury stock," issued and thereafter re-acquired by corporations, where the statutory formalities to decrease capital stock have not been complied with. Knickerbocker Importation Co. v. State Board of Assessors, 65 A. 913, 9 L. R. A. (N. S.) 885 (New Jersey Court of Errors and Appeals); Kemp v. Levinger, 174 S. E. 820 (Va.); State v. Stewart Bros. Cotton Co., 190 So. 317 (La.); Goldstein-Fineberg Co. v. State Board of Assessors, 83 A. 773 (New Jersey Supreme Court); Vulcan Wheels, Inc. v. Martin, State Tax Commissioner, 179 A. 620 (New Jersey Supreme Court); Borg v. International Silver Co., 11 F. (2d) 147 (Second Circuit Court of Appeals).

This rule has been held to be applicable even if the corporation has no intention of ever reissuing the stock. State v. Stewart Bros. Cotton Co., supra.

It follows then that, for computation of the franchise tax, the corporation's balance sheet should show "outstanding capital stock" in the sum of $1,250,000.00, that being the amount issued and outstanding prior to the purchase of the treasury stock, and this remains true until the corporation performs the statutory formalities for a decrease of its capital stock, as provided in Article 1332, supra.

Hon. Sidney Latham, page 4

Having determined that the corporation's purchase of part of its own stock does not decrease the "outstanding capital stock" for franchise tax purposes, we pass next to a consideration of the effect of the purchase on the balance sheet item of "surplus." The capital structure of a corporation, including outstanding capital stock, surplus, undivided profits, etc., on which the franchise tax is based, appears in the liability portion of the balance sheet. The proper accounting method for franchise tax purposes of handling the purchase of the treasury stock by the corporation becomes relatively simple when we consider that the authorities treat such re-acquired or treasury stock as an "asset" of the corporation, which may be disposed of by sale or otherwise like any other corporate asset. Robinson v. Bradley, 141 S. W. (2d) 425, (Dallas Court of Civil Appeals, not appealed to Supreme Court); Hildebrand, "Texas Corporations," Vol. 2, page 110; Borg v. International Silver Co., 11 F. (2d) 143, (Dist. Ct., New York) affirmed 11 F. (2d) 147; 18 C. J. S., page 645, Sec. 211; Thompson on Corporations, 3rd Ed., Sec. 4084.

Therefore, the purchase of the treasury stock should be reflected on the balance sheet like the purchase of any other asset. But the question immediately arises: What valuation is to be placed on this asset? Is it to be set at par value of the stock, or at the price paid therefor by the corporation, or at some other figure? The amount of surplus will be affected by the valuation placed on this asset.

Every corporation is required to make a sworn report to the Secretary of State annually containing a balance sheet, and said report is required to list the "cash value" of all gross assets of the corporation. Art. 7089, R. S. And the Secretary of State may require the corporation's officers to submit additional information under oath, and until he is fully satisfied therefrom as to the amount of surplus and undivided profits, he need not accept the franchise tax. Article 7087, R. S.

It must be borne in mind, however, that it is not the Secretary of State who fixes the "cash value" of the assets of the corporation, which go into the balance sheet to aid in determining the amount of "surplus and undivided profits." "The act nowhere authorizes the

Hon. Sidney Latham, page 5

Secretary to assess the tax. It requires the taxpayer to pay it on a certain basis and to disclose the facts constituting the basis in a report to the Secretary. It is true . . . the value of assets where a surplus exists involve disputable facts, but authority is given to no officer to correct the figures reported. The additional information required in the regular report or obtained by affidavit under Article 7087 or otherwise may be useful to induce a true report or to found a prosecution for false swearing in making an untrue one. . . . If because of a dispute over surplus he rejects the tax, the Attorney General must file suit for its collection under Article 7095. Presumably in that suit a full hearing should be had as to the matters in dispute." Southern Realty Co. v. McCallum, 65 F. (2d) 934, certiorari denied, 4 S. Ct. Rep. 127. See also United North and South Development Co. v. Heath, 78 S. W. (2d) 650, error refused.

Accordingly, the corporation balance sheet should reflect the purchase of the treasury stock as an exchange of assets. To illustrate: If the corporation determines that the "cash value" of the stock purchased was the price for which it was re-acquired from the stockholder, the item "treasury stock" should be listed as an asset in such amount, and the item "cash," assuming it was a cash purchase, should be credited for the same amount. This would leave the item "surplus" unchanged. On the other hand, if the corporation should determine that the "cash value" of said stock was par or any other sum larger than the amount actually paid therefor, the treasury stock should be listed as an asset of such value as so determined; cash would be credited for the price paid; and the difference, representing the profit margin on the deal, would be added to surplus or undivided profits. Conversely, if the corporation should value said stock at less than the purchase price, reflecting a loss on same, treasury stock would be listed as an asset at such value; cash would be credited for the price paid; and the difference or loss would be applied as a reduction of surplus.

Our answer, therefore, to your question is that the effect of the treasury stock purchase by the corporation on the item of "surplus" depends entirely on the "cash value"

of such stock arrived at as hereinabove set forth. We suggest that you call on the officers of said corporation, as authorized by Art. 7087, supra, for whatever additional information you may need in order that the tax may be computed in accordance with this opinion.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By      *J. Arthur Sandlin*
        J. Arthur Sandlin
        Assistant

JAS:AM